MARTA E. VILLACORTA (NY SBN 4918280)
Assistant United States Trustee
TREVOR FEHR (SBN 316699)
Trial Attorney
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
450 Golden Gate Avenue, Fifth Floor
San Francisco, California 94102
Tel:  (415) 705-3300
Fax: (415) 705-3379
Trevor.Fehr@usdoj.gov

Attorneys for United States Trustee
Tracy Hope Davis

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**INTERNATIONAL ORANGE SPA, INC.,**<br><br>Debtor. | Bankruptcy Case<br>No. 20-30812 HLB<br><br>Chapter 11<br><br><br>Date:   October 14, 2020<br>Time:   10:00 a.m. (Pacific Time)<br>Place:   Telephonic/Video Hearing<br>Judge:   Honorable Hannah L. Blumenstiel |

**UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO**
**DEBTOR'S FIRST DAY MOTIONS [ECF Nos. 3, 4, 5, 6 & 7]**

Tracy Hope Davis, United States Trustee for Region 17 (the "U.S. Trustee"), hereby files this omnibus objection (the "Omnibus Objection") to the first-day motions filed the Debtor International Orange Spa, Inc.  These first day motions are referred to collectively hereafter as the "First Day Motions", or individually, as set forth below:

- *Emergency Motion to Retroactively Reject Lease* (the "Lease Rejection Motion") [ECF No. 3];

1

- *Emergency First Day Motion to Retain Pre-Petition Bank Accounts* (the "Pre-Petition Bank Accounts Motion") [ECF No. 4];

- *Emergency First Day Motion to Use Cash Collateral* (the "Cash Collateral Motion") [ECF No. 5];

- *Emergency First Day Motions to Honor Employee Obligations* (the "Employee Obligations Motion") [ECF No. 6]; and

- *Emergency First Day Motion to Honor Gift Certificates* (the "Gift Certificates Motion") [ECF No. 13].

The U.S. Trustee reserves all rights to object to any final relief sought by the Debtor in these First Day Motions.

This Omnibus Objection is supported by the following memorandum of points and authorities and any argument the Court may permit on the Omnibus Objection.[1]

### I. MEMORANDUM OF POINTS AND AUTHORITIES

**A. Introduction**

The Debtor's requests for relief in the First Day Motions should either be (a) denied; (b) denied in part; or (c) limited to only emergency relief to permit the Debtor to sustain business operations. The Debtor chose to proceed under Subchapter V of Chapter 11 of the Bankruptcy Code. A Subchapter V Trustee has been appointed the day of the objection deadline and has not had sufficient time to review the Debtor's First Day Motions. The U.S. Trustee has communicated with both the Subchapter V Trustee and Debtor's Counsel regarding some of the issues outlined below in anticipation of the October 14, 2020 hearing; however it is the U.S. Trustee's position that this Omnibus Objection should be sustained or the hearing should be

---

[1] The U.S. Trustee requests that the Court take judicial notice of the pleadings and documents filed in these cases pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201. To the extent that the Omnibus Objection contains factual assertions predicated upon statements made by Debtor, any of its current or former affiliates, agents, attorneys, professionals, officers, directors or employees, the U.S. Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 801(d)(2).

adjourned to a later date to allow the Subchapter V Trustee, creditors, or other parties-in-interest, a meaningful opportunity to evaluate these First Day Motions.

**B.     Background Facts and Procedural Posture**

1.     On October 11, 2020 (the "Petition Date"), the Debtor commenced its voluntary case under Subchapter V of Chapter 11 of the Bankruptcy Code. *See* ECF No. 1. The Petition was signed by Melissa Ferst, as the Debtor's President. *Id*. Ms. Ferst was designated the Responsible Individual for the Debtor. ECF No. 13.

2.     A Subchapter V Trustee, Christopher Hayes, was appointed on October 13, 2020. ECF No. 15.

3.     The U.S. Trustee has not yet conducted the Initial Debtor Interview. The meeting of creditors in this case has been scheduled for November 10, 2020, at 9:00 a.m. *See* Bankruptcy Docket, *generally*.

4.     On the Petition Date, the Debtor also filed its list of 20 largest unsecured creditors, Schedule A/B, Schedule D, Schedule E/F and the Statement of Financial Affairs. *See* ECF No. 1. On its Schedule A/B, the Debtor listed total value of its property as $756,842.79. *See* ECF No. 1, p. 14. The Debtor's scheduled assets include $66,417.79 in cash or cash equivalents on hand held in two Wells Fargo business accounts and a Bank of Marin business checking account. *Id*. at 8. The Debtor's scheduled assets also include $48,527.00 in retail inventory. *Id*.

5.     According to its Statement of Financial Affairs, Ms. Ferst is the Debtor's President and 100% shareholder. The Debtor paid Ms. Ferst compensation and benefits totaling $147,829.40 for the period of October 1, 2020 through September 30, 2020. *See* ECF No. 1, pp. 31, 36-37.

6.     The Debtor filed the First Day Motions in the afternoon of Sunday October 11, 2020. On October 12, 2020, the Bankruptcy Court entered an order setting the hearing on the First Day Motions for October 14, 2020, at 10:00 a.m. with an objection deadline of October 13, 2020. *See* ECF No. 10. The First Day Motions are supported by Ms. Ferst's declaration. *See* ECF No. 8 (the "First Day Declaration").

7. Prior to the Petition Date, the Debtor operated day spas at 20144 Filmore Street in San Francisco, California (the "San Francisco Location") and at 2421 Larskur Landing Circle in Larkspur, California (the "Marin Location"). *See* ECF No. 8. However, the Debtor has surrendered possession of the San Francisco Location to its landlord, but is expecting to assume the lease on the Marin Location. *Id*.

8. The U.S. Trustee has communicated with both the Subchapter V Trustee and Debtor's Counsel regarding some of the issues outlined below in anticipation of the October 14, 2020 hearing.

## II.     ARGUMENT

Four principles for Courts to consider with regard to first day motions are:

> First, the requested relief should be limited to that which is minimally necessary to maintain the existence of the debtor, until such time as the debtor can affect appropriate notice to creditors and parties in interest. In particular, a first day order should avoid substantive rulings that irrevocably determine the rights of parties.
>
> Second, first day orders must maintain a level of clarity and simplicity sufficient to allow reasonable confidence that an order will effect no unanticipated or untoward consequences.
>
> Third, first day orders are not a device to change the procedural and substantive rights that the Bankruptcy Code and Rules have established. In particular, first day orders should provide no substitute for the procedural and substantive protections of the plan confirmation process.
>
> Fourth, no first day order should violate or disregard the substantive rights of parties, in ways not expressly authorized by the Bankruptcy Code.

*See In re The Colad Group, Inc.*, 324 B.R. 208, 213-14 (Bankr. W.D.N.Y. 2005).

Accordingly, the relief sought in all of the First Day Motions, if granted at all, should only be granted on an interim basis, with a final hearing set so that the Subchapter V Trustee can review and respond to the final relief sought, preferably after a meeting of creditors is held.

4

A. **The Lease Rejection Motion**

As set forth in the Lease Rejection Motion, the Debtor surrendered the San Francisco Location on October 7, 2020. *See* ECF No. 3. The Debtor is requesting authorization to reject the lease on the San Francisco Location effective as of the Petition Date. *Id*. The Debtor asserts that this relief is necessary to avoid immediate and irreparable harm, as is the standard under Bankruptcy Rule 6003. *Id*.

The Debtor argues that "the unnecessary accrual of an administrative rent claim represents irreparable harm to the estate." However, the Debtor has not demonstrated how the accrual of rent necessitates a final order within the first days of the case's filing. Fed. R. Bankr. P. 6003; *see also In re The Colad Group, Inc.*, 324 B.R. 208, 213-14 (Bankr. W.D.N.Y. 2005) (first day orders should be limited to what is necessary to maintain the existence of the debtor and avoid substantive rulings that irrevocably determine the rights of parties until proper notice to creditors). Thus, the Lease Rejection Motion should not be heard at the first day hearing. Consideration of the Lease Rejection Motion should instead be deferred to a later hearing date that permits sufficient notice to the landlord, the Subchapter V Trustee and parties in interest. To the extent that the Court does grant relief with respect to the Lease Rejection Motion, such relief should be on an interim basis and limited to what is necessary for the Debtor to sustain operations, pending a final hearing on sufficient notice to the landlord, the Subchapter V Trustee and other parties in interest.

B. **The Employee Obligations Motion**

i. **Pre-Petition Payments**

As set forth in the Employee Obligations Motion, the Debtor seeks relief to "make payroll for the prepetition period (to the extent any such payments have not cleared by that date) and to honor employee benefits programs in the ordinary course of business going forward[.]" *See* ECF No. 6, p. 6. The Debtor funds payroll on the 10th and 25th of each month, however on October 8, 2020, the Debtor pre-paid the employee payroll that was scheduled to be funded on October 25, 2020. *Id*.

5

Although the pleading is not clear, it appears that the "pre-paid" payroll is encompassed by the "payroll for the prepetition period" for which the Debtor is requesting approval. It appears that the Debtor is seeking declaratory relief to immunize the pre-petition payments from later challenge as preferences and/or fraudulent transfers. *See* 11 U.S.C. §§ 547 *and* 548. This type of relief requires an adversary proceeding. *See* FRBP 7001(9) (a proceeding to obtain a declaratory judgment requires an adversary proceeding). The Employee Obligations Motion also fails to disclose whether any of the previous or proposed transfers are to insiders. *See* 11 U.S.C. §503(c); *see also In re Kmart Corp.*, 359 F.3d 866, 873-74 (7th Cir. 2004). The Debtor should not be permitted to sidestep the procedural protections of an adversary proceeding with a motion brought on a mere three days' notice. The U.S. Trustee opposes the grant of any relief with respect to pre-petition transfers made by the Debtor.

### ii. Payment of Pre-Petition Employee Obligations

The U.S. Trustee takes no position on the payment of (i) pre-petition claims of the Debtor's non-insider employees that are entitled to priority under Sections 507(a)(4) and 507(a)(5), or (ii) the related payroll taxes, deductions and withholdings, provided these amounts do not exceed the statutory cap.

However, the U.S. Trustee opposes any payments on claims that are not entitled to priority status. *See, e.g., In re EcoSmart, Inc.*, 2015 WL 9274245, at *9 (Bankr. C.D. Cal. Dec. 18, 2015) ("[A]bsent the priority status of claims, the courts have not seen justification to allow payment of prepetition claims of so-called 'critical vendors,' and this court will follow such examples and require Debtor to demonstrate that the priority status of wage, salary and commission claims of its employees and independent contractors … to warrant immediate payment in advance of general distribution on prepetition claims.").

Moreover, the U.S. Trustee also opposes payments to any of the Debtor's insiders. Ninth Circuit case law casts considerable doubt on whether the necessity of payment doctrine applies outside the context of railroad reorganizations and otherwise survived the enactment of the Bankruptcy Code. *See In re B & W Enterprises, Inc.,* 713 F.2d 534, 537 (9th Cir. 1983) ("The Necessity of Payment Rule was created for and has been applied only to railroad cases. Absent

6

Case: 20-30812    Doc# 18    Filed: 10/13/20    Entered: 10/13/20 19:12:46    Page 6 of 10

compelling reasons, we deem it unwise to tamper with the statutory priority scheme devised by Congress in the 1978 Act.").

With respect to the argument that a bankruptcy court's general equitable powers authorize such relief, the Ninth Circuit observed, "[t]here is no indication that Congress intended the courts to fashion their own rules of super-priorities within any given priority class." *Id.*; *see also Willms v. Sanderson*, 723 F.3d 1094, 1103 (9th Cir. 2013) ("A bankruptcy court's equitable powers 'must and can only be exercised within the confines of the Bankruptcy Code.'") (*quoting Norwest Bank Worthington v. Ahlers*, 485 U.S. 197 (1988)).

To the extent Section 363(b) can be a basis for paying a pre-petition claim, courts have required debtors to demonstrate that (i) the recipient of the payment would otherwise cease doing business with the debtor, and (ii) disfavored creditors will not be harmed by the payment. *See, e.g., In re Kmart Corp.*, 359 F.3d 866, 873-74 (7th Cir. 2004).

Moreover, the "general rule is that a distribution on prepetition debt in a Chapter 11 case should not take place except pursuant to a confirmed plan of reorganization, absent extraordinary circumstance." *See In re Airbeds, Inc.*, 92 B.R. 419, 422 (B.A.P. 9th Cir. 1988) (emphasis added). The Employee Obligations Motion fails to address whether any of the employees paid, or to be paid, are insiders. However, based on the Debtor's Statement of Financial Affairs, it appears that the Debtor's President and 100% Shareholder Melissa Ferst receives an ongoing salary. *See* ECF No. 1, pp. 31 and 37. To the extent that the motion does seek authorization to pay insiders, the Debtor has not demonstrated that such payments are consistent with 11 U.S.C. §§ 503(c)(1) or (3), or that the immediate payment to insiders is necessary to avoid immediate and irreparable harm to the Debtor. *See* Fed. R. Bankr. P. 6003(b); *see also In re Humboldt Creamery, LLC*, 2009 WL 2820552, at *1 (Bankr. N.D. Cal. Apr. 23, 2009) ("The request is governed by Rule 6003(b) of the Federal Rules of Bankruptcy Procedure. This rule does not permit the payment of a claim which arose prepetition for the first 20 days of a bankruptcy unless it is necessary to avoid immediate and irreparable harm.").

Thus, before the motion is granted, the Debtor should file a list of employees (along with their titles) that they are proposing to pay, along with the proposed payments. *Cf. In re Motors*

7

*Liquidation Co.*, 561 B.R. 36, 38 n.1 (Bankr. S.D.N.Y. 2016) ("[P]rivate parties rarely if ever object to another party's sealing motion. The Court and the United States Trustee have generally been vigilant in protecting the public interest in public access to court records.").

### iii. The Court Should Not Authorize Payment to the Debtor's Insiders for Post-Petition Payroll Obligations.

As a part of the Employee Obligations Motion, the Debtor seeks authority to continue to incur and pay post-petition payroll obligations in the "ordinary course of its business, without regard to whether those obligations were earned or accrued pre-petition or post-petition." *See* ECF No. 6, p. 10. The U.S. Trustee opposes this relief as it relates to the Debtor's insiders.

To the extent that payments for post-petition payroll obligations are truly in the ordinary course of the Debtor's business, the Court's authorization is unnecessary. *See* 11 U.S.C. §§ 363(c)(1), 1184; *see also In re Lochmiller Indus., Inc.*, 178 B.R. 241, 247 (Bankr. S.D. Cal. 1995) ("Code section 1108, together with sections 363(c)(1) and 1107, authorizes a debtor in possession … to make payments to trade creditors *without prior Court approval* so long as such payments are made in the ordinary course of the debtor's business") (emphasis added).

Conversely, if the payments are outside the ordinary course, the payments may be approved only if the Court finds them to be (i) necessary to preserve the value of the Debtor's estate, and (ii) "justified by the facts and circumstances of the case." *See* 11 U.S.C. § 503(c)(3); *In re Dant & Russell, Inc.,* 853 F.2d 700, 706 (9th Cir. 1988) ("Any claim for administrative expenses and costs must be the actual and necessary costs of preserving the estate for the benefit of its creditors."), *superseded by statute on other grounds*, 11 U.S.C. § 365(d)(3); *see also In re Regensteiner Printing Co.*, 122 B.R. 323, 326 (N.D. Ill. 1990) (reversing approval of severance agreements for key employees, because debtors presented no evidence that severance payments were necessary to preserve bankruptcy estate); *In re Pacific Gas and Electric Co.*, 2001 WL 34133840, at *2 n.4 (Bankr. N.D. Cal. July 13, 2001) (initial declaration "'on information and belief'" was "insufficient" basis to grant KERP motion).

In *In re Dana Corp.,* the court listed several factors that courts consider when determining if the structure of a compensation proposal and the process for its development

satisfy Section 503(c)(3). *In re Dana Corp.,* 358 B.R. at 576–77; *see also In re PG&E Corp.*, 2019 WL 4686765, at *2-*3 (Bankr. N.D. Cal. Aug. 30, 2019) (utilizing the *Dana* factors to assess whether a KEIP was justified by the facts and circumstances of the case).

The Debtor has failed to address the *Dana* factors or otherwise satisfy its burden under Section 503(c)(3). Crucially, the Motion fails to disclose basic information about the proposed payments, including (i) the names and titles of the proposed recipients, and (ii) how much the Debtor proposes to pay to insiders for post-petition payroll obligations.

Further, any relief granted should be interim and limited for the Debtor to sustain operations and to provide adequate protection, if any, to allow the Subchapter V Trustee and parties that were not provided sufficient notice to be heard.

**C.    The Gift Certificates Motion**

According to the Gift Certificates Motion, the Debtor requests authorization to honor pre-petition gift certificates in the amount up to the amount of $1,251,058. *See* ECF No. 7. The value of these gift certificates drastically exceeds the total value of the Debtor's assets, which is listed as $756,842.79. *See* ECF No. 1, p. 14. The Debtor argues that gift certificates are entitled to priority and payment under Section 507(a)(7), up to $3,205. *See* ECF No. 7, p. 4; *see also* 11 U.S.C. § 507(a)(7).

If the Gift Certificates Motion is granted, the Debtor should be required to institute a tracking mechanism to track when gift certificates were issued, redeemed, and ensure that gift certificates are redeemed only to the extent that the underlying claim is entitled to priority under 11 U.S.C. § 507(a)(7). *See, e.g., In re The Bon-Ton Stores, Inc., et al.,* Case No. 18-10248 (Bankr. Del. February 6, 2018), ECF No. 113. This information should be reported on the Debtor's monthly operating reports. In addition, the Court should impose a reasonable aggregate cap for the redemption of gift certificates. Finally, any relief granted should be on an interim basis and limited to what is necessary for the Debtor to sustain operations. The Subchapter V Trustee and parties in interest should be given sufficient time to evaluate the business and the Debtor's potential liabilities in relation to the gift certificate program.

//

### III. CONCLUSION

In view of the shortened notice provided to the Subchapter V Trustee, creditors, and other parties-in-interest, along with the Debtor's failure to establish a sufficient evidentiary record for the relief sought, the First Day Motions should either be denied in the entirety, denied in part as set forth herein, or any relief granted should be limited for the Debtor to sustain operations and to provide adequate protection, if any. Alternatively, the First Day Motions should be adjourned until a later date. The U.S. Trustee has been in communication with the Subchapter V Trustee and Debtor's Counsel to the extent possible, however adjournment would permit the Subchapter V Trustee and parties that were not provided sufficient notice to review and object to the First Day Motions. The U.S. Trustee reserves all her rights with respect to the First Day Motions and other motions filed on the Petition Date.

**WHEREFORE**, the U.S. Trustee requests the Court to sustain her Omnibus Objection; and grant such other relief as is just under the circumstances.

Dated: October 13, 2020

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By:/s/ Trevor R. Fehr
Trevor R. Fehr
Trial Attorney for the United States Trustee